APAYDIN, Admr., Appellant,

v.

CLEVELAND CLINIC FOUNDATION, Appellee.

[Cite as *Apaydin v. Cleveland Clinic Found.* (1995), 105 Ohio App.3d 149.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67100.

Decided July 17, 1995.

*Spangenberg, Shibley, Traci, Lancione & Liber, Peter H. Weinberger* and *John D. Liber,* for appellant.

*Reminger & Reminger, James L. Malone* and *Clifford C. Masch,* for appellee.

KARPINSKI, Judge.

This appeal arises from a judgment of the trial court on a jury verdict for defendant-appellee Cleveland Clinic Foundation ("Cleveland Clinic") in a medical malpractice action by plaintiff-appellant John Apaydin, administrator of the estate of Bekir Celik. Plaintiff challenges the trial court's denial of his motions for mistrial and for new trial following the removal of one juror and substitution of an alternate juror during the case but prior to the jury's deliberations.

Plaintiff filed a medical malpractice case against the Cleveland Clinic for the wrongful death of Celik, a Turkish citizen, in the trial court on November 19, 1990. Plaintiff's complaint alleged that Cleveland Clinic employees negligently administered excessive doses of potassium chloride to the decedent following coronary artery bypass surgery at the Cleveland Clinic on September 1, 1988. Plaintiff alleged that the potassium chloride overdose following the surgery proximately caused decedent's cardiac arrest and death the following day on September 2, 1988.

The Cleveland Clinic filed an answer denying the substantive allegations of plaintiff's complaint and raised a counterclaim for $38,085.99 in unpaid medical expenses. Plaintiff filed an answer denying the allegations of the Cleveland Clinic's counterclaim.

The matter proceeded to a jury trial over the course of a seven-day period commencing December 6, 1993. The partial transcript of proceedings submitted on appeal demonstrates that decedent's Turkish citizenship or nationality was a recurrent theme during pretrial *voir dire* by both sides. Counsel for plaintiff raised the subject at least five times, and counsel for defendant raised the matter at least four times. At the conclusion of his supplemental *voir dire,* counsel for

plaintiff inquired of the entire panel of potential jurors whether any juror believed Turkish citizens should not seek money damages in Cleveland. Plaintiff's counsel did not question any individual member of the *venire* concerning this matter and stated that he assumed from the silence and shaking of heads that the potential jurors did not possess such a belief and would not allow such feelings to affect them in the jury room.

No potential jurors were excluded for cause and each party exercised one peremptory challenge prior to selecting eight jurors and one alternate juror. The trial court empaneled the eight jurors and alternate juror at the conclusion of *voir dire*. The matter thereafter proceeded to trial before the eight jurors and one alternate juror. The partial transcript of proceedings submitted on appeal does not recite any of the evidence presented by the parties at trial.

The trial was interrupted on the afternoon of December 9, 1993, the third day of trial, to remove one of the jurors and replace her with the alternate juror. The trial court conducted an *in camera voir dire* of each original and alternate juror individually concerning a statement reportedly made by one of the jurors concerning the case. The *in camera* proceeding was held in the presence of counsel for both parties and transcribed by the court reporter; however, the exact statement made by the offending juror was not recorded *verbatim* in the transcript. The parties supplemented the record on appeal to indicate that juror No. 1 had stated, to as many as three other jurors, "that people from Turkey should not be permitted to sue the Cleveland Clinic for money damages—or words to that effect." The record contains no further elaboration of this statement, either by way of stipulation or evidence.

The trial court removed juror No. 1 from the jury. Each of the seven remaining original jurors, including the three who heard a statement by juror No. 1, responded under questioning by the trial court that the circumstances would not affect his or her ability to remain fair and impartial. The alternate juror subsequently responded that she also had not heard any statement by juror No. 1 and the circumstances would not affect her ability to remain fair and impartial. The trial court thereafter placed the alternate juror on the jury. Counsel for the parties declined the opportunity to question any of the jurors further and did not object to the substitution of the alternate juror. The trial court adjourned proceedings for the afternoon after repeating its admonition to the jury not to discuss the case with anyone.

Counsel for plaintiff made a motion for mistrial out of the hearing of the jury the following morning, on December 10, 1993. The trial court denied plaintiff's motion for mistrial and the trial resumed before the reconstituted jury.

Following deliberations, the reconstituted jury returned a general verdict, seven to one, in favor of defendant on plaintiff's complaint. The trial court

entered judgment December 17, 1993, on the jury verdict for defendant. The trial court's December 17, 1993 journal entry did not expressly resolve the Cleveland Clinic's counterclaim against plaintiff for unpaid medical bills.

Plaintiff thereafter filed a two-and-one-half-page Civ.R. 59 motion for a new trial, to which the Cleveland Clinic filed a brief in opposition. In an order journalized March 7, 1994, the trial court denied plaintiff's motion for a new trial.

On the same day, plaintiff filed a notice of appeal. During the course of the appeal, the pending counterclaim of the Cleveland Clinic for unpaid medical bills was dismissed by stipulation and judgment entry. Plaintiff's brief on appeal raises the following sole assignment of error:

"The trial court abused its discretion in failing to order a mistrial and a new trial in the face of blatant jury misconduct involving ethnic and racial prejudice."

Plaintiff's sole assignment of error lacks merit.

Plaintiff argues generally that the trial court improperly denied his motions for mistrial and for new trial. Specifically, plaintiff contends that the jury decided this case not on the basis of the evidence presented by the parties, but on racial and ethnic prejudice.

It is well established that a trial court's denial of a motion for mistrial or for new trial will not be reversed on appeal absent an abuse of discretion under the facts and circumstances of the case. *Savage v. Correlated Health Serv., Ltd.* (1992), 64 Ohio St.3d 42, 47, 591 N.E.2d 1216, 1219–1220; *McDonald v. Akron* (1993), 86 Ohio App.3d 209, 210–211, 620 N.E.2d 230, 231–232; *Sowers v. Middletown Hosp.* (1993), 89 Ohio App.3d 572, 584–585, 626 N.E.2d 968, 976–978 (new trial).

The Ohio Supreme Court has repeatedly held that an abuse of discretion involves more than an error of law or judgment, and to warrant reversal the trial court's action must be arbitrary, unreasonable or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309. The *Berk* court unanimously reversed this court of appeals and held, contrary to plaintiff's argument, that appellate courts are not free to substitute their judgment for trial courts concerning the qualification of jurors. *Id.* Based on our review of the record in accordance with this standard, plaintiff has failed to demonstrate that the trial court abused its discretion to warrant reversal in this case.

This was a complicated medical malpractice action which had already been continued for trial four times for a period of approximately fifteen months. On December 9, 1993, three days after the trial began, the trial court was notified that one juror had made a statement concerning the case. The trial court conducted a voir dire of each juror individually in the presence of counsel

concerning the occurrence. The trial court promptly removed and replaced the offending juror and questioned each remaining juror to determine whether he or she had heard any such statement and could remain fair and impartial under the circumstances. Counsel for the parties did not object to the substitution of the alternate juror and declined the opportunity to question any of the jurors concerning their impartiality. The trial resumed and the offending juror did not participate in any deliberations or the jury verdict for defendant.

Plaintiff argues that the trial court's judgment on the jury verdict for defendant should be reversed. Plaintiff's brief on appeal cites for the first time and places great emphasis on *McDonough Power Equip., Inc. v. Greenwood* (1984), 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663, to support his argument. However, plaintiff's reliance on *McDonough* is misplaced, since the peculiar facts of that case are readily distinguishable.

Following a defense verdict, the plaintiffs in *McDonough* filed a motion for new trial based on one juror's alleged failure to answer correctly a question during pretrial voir dire. Without conducting a hearing, the trial court denied plaintiffs' motion for new trial. The appellate court, however, granted plaintiff a new trial, without remanding the matter to the trial court for a hearing, on the grounds that the juror's conduct "prejudiced [plaintiffs'] right to peremptory challenge." *Id.* at 548, 104 S.Ct. at 846, 78 L.Ed.2d at 663.

The Supreme Court reversed the order granting a new trial because the appellate court (1) applied the wrong legal standard for establishing prejudice, and (2) improperly ruled on the merits of the new trial motion without remanding the matter to the trial court. Applying the principle of harmless error, the Supreme Court stated that the plaintiffs were "not entitled to a new trial unless the juror's failure to disclose denied [plaintiffs] their right to an impartial jury." *Id.*

As noted by plaintiff, the Supreme Court further particularized this standard, stating that the failure to answer a question correctly in voir dire constitutes harmless error and does not warrant a new trial unless the aggrieved party shows (1) that the challenged juror failed to answer a material question honestly on voir dire, and (2) that a correct response would have provided a valid basis for a pretrial challenge for cause. Plaintiff contends that he satisfied this standard in the case *sub judice*.

These criteria, however, are not helpful in the case at bar because of a significant difference in the facts. In *McDonough* the challenged juror participated in the jury deliberations. Indeed, he was the jury foreman. In the case at bar, on the other hand, the challenged juror did not participate in the jury's deliberations or verdict.

Because the particular criteria tailored by the court in *McDonough* arose from a different set of facts, only the broader principle articulated by that court is applicable to the case at bar: "One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough, supra,* 464 U.S. at 554, 104 S.Ct. at 849, 78 L.Ed.2d at 670, citing *Smith v. Phillips* (1982), 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86.

In the case *sub judice,* the trial court took action to safeguard the parties' respective rights to trial by a jury of unbiased and unprejudiced jurors by curing the offending juror's misconduct *prior to deliberations.* First, the trial court removed the challenged juror on the third day of a seven-day trial. Civ.R. 47(C) expressly provides for the substitution of jurors during trial prior to deliberations as follows:

"(C) Alternate jurors.  * * * Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties."

Counsel for plaintiff did not object, at any time, to the trial court's substitution of jurors.

As a result of the prompt action by the trial judge, the offending juror did not deliberate or participate in the subsequent verdict in any way. For this reason, the numerous cases cited by plaintiff involving incidents of juror misconduct during deliberations are distinguishable.

The trial court further safeguarded the parties' right to a fair trial by specifically determining that the remaining jurors and alternate juror were not "tainted" in any way by the offending juror's single, isolated comment. The trial judge individually questioned each remaining juror and the alternate, all of whom stated they would remain fair and impartial despite the incident. Four of the original jurors and the alternate juror did not even hear any statement by the offending juror. The record contains no hint of bias, moreover, by any of the three jurors who heard the offending juror's statement. One of these jurors specifically informed the trial court of the incident, another juror told the offending juror not to discuss the case, and the third juror stated she heard the comment only "in passing."

Plaintiff complains for the first time on appeal that the trial court conducted only a "superficial *voir dire*" concerning this incident and improperly accepted the jurors' "scanty assurances they could remain fair and impartial." However, the record demonstrates that counsel for plaintiff expressly declined the opportunity to conduct any further inquiry of the jurors in the following colloquy:

"THE COURT: Now is the time to tell me. If you want to question the jurors individually, I will allow you to question them.

"We now know that two for sure have heard it. One brought it to our attention. And they told her [the offending juror] not to do it. Two of them clearly told her not to do it.

"[PLAINTIFF'S COUNSEL]: I don't want to get back into it. I don't know.

"[DEFENSE COUNSEL]: I think my further questioning of the jury would be detrimental to all counsel."

Plaintiff's counsel had the right to be informed fully about the extent of the influence of the challenged juror. When the trial judge invited counsel to question the jurors further, counsel had the unique opportunity to expose the bias he now asks the reviewing court to infer was there—an inference the court is asked to draw without even the benefit of a complete transcript. Plaintiff's failure to question further any of the jurors to reveal any potential taint or anti-Turkish sentiment leaves no basis to contradict the jurors' statements or the trial court's finding concerning their impartiality. The trial court had a superior opportunity to observe the jurors for purposes of evaluating their credibility, and we decline to substitute our judgment for that of the trial court. *Berk v. Matthews, supra; State v. Zuern* (1987), 32 Ohio St.3d 56, 61–62, 512 N.E.2d 585, 590–592; *State v. King* (1983), 10 Ohio App.3d 161, 166, 10 OBR 214, 219–220, 460 N.E.2d 1383, 1388–1389.

■ Plaintiff argues that if the offending juror had disclosed anti-Turkish prejudice during *voir dire*, she would have been excluded for cause as a juror prior to trial. Plaintiff's right to peremptory challenge is not at issue, however, since the juror was ultimately removed. That she was not removed until after the trial began does not necessarily taint a jury so that it is incapable of deciding the case impartially. The stage at which a biased comment occurs is an important consideration, but not the only one. Also important is the effect of the remark. Had the comment occurred during *voir dire* before trial, all jurors would have been exposed to it.[1] The effect of a comment made only once in the first days of trial and heard by only three jurors, however, is even more contained than one made at *voir dire* to everyone. Moreover, the immediate removal of that juror, especially after the court stopped the trial to examine each juror individually about the remark, implicitly signalled an admonition that cured whatever harmful effect there may have been on the three who heard the remark.

---

1. Biased statements by one potential juror in pretrial *voir dire* do not irreparably taint the entire panel of prospective jurors. *Costell v. Toledo Hosp.* (1992), 82 Ohio App.3d 393, 399–400, 612 N.E.2d 487, 490–492.

Plaintiff also contends that the trial court committed reversible error by denying his motion for new trial, since Ohio law recognizes a presumption of prejudice resulting from jury misconduct. Plaintiff cites *State v. King, supra,* in support of this argument. However, the *King* court specifically recognized that this presumption of prejudice was rebuttable and, in fact, was sufficiently rebutted in that case. The record *sub judice* of the response of all seven original jurors and the alternate juror likewise contains sufficient evidence to rebut any presumption of prejudice.

As noted above, each juror affirmed being able to remain fair and impartial following the removal of the offending juror. Moreover, the trial court specifically found as follows:

" * * * Further, in terms of plaintiff's motion for mistrial, I would indicate for the record, and as the record will indicate, there was an individual *voir dire* of each and every juror. Both counsel were present. No questions were asked by either counsel for the defendant of the plaintiff.

"I find no indication or indicia of even a scintilla of bias or prejudice. Quit [*sic*] the opposite. I find that the jurors did exactly what they were supposed to do.

"So while I understand your motion, it is overruled."

Finally, Plaintiff's failure to submit a complete transcript on appeal has further limited this court's ability to review the decision of a trial judge who observed the entire proceedings. For many reasons, the trial court had the superior ability to determine whether the jury's verdict was based on bias or evidence.

Whether the guarantee of an impartial jury was honored is not decided by any ready-made formula. As Justice Brennan said in his concurring opinion in *McDonough, supra,* 464 U.S. at 559, 104 S.Ct. at 851, 78 L.Ed.2d at 673:

"Motions for new trial on the basis of juror bias are left to the sound discretion of the trial court, and its determination should not be lightly disturbed by an appellate court. This is especially true when decision on the motion turns, as it does here, on the particular facts and circumstances involved."

Under the circumstances, we are unable to substitute our judgment for that of the trial court.

Accordingly, plaintiff's sole assignment of error is overruled.

*Judgment affirmed.*

BLACKMON, P.J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

The Supreme Court of Ohio considered the effect of jury misconduct on proceedings in *Armleder v. Lieberman* (1877), 33 Ohio St. 77:

"Where there has been irregularity or misconduct on the part of the jury, which might affect its judgment, or improperly influence the verdict, a new trial should be granted. Where, however, it clearly appears that no improper effect could arise from the alleged misconduct, the verdict should stand." *Id.*, paragraph one of the syllabus.

The record herein does not clearly reveal that the complained-of comment by the juror had no improper effect on the remaining jurors and their subsequent verdict. I, therefore, respectfully dissent from the majority's determination in this case that appellant was not entitled to a mistrial or new trial.

Initially, I disagree with the majority's attachment of less significance to the juror's alleged prejudicial and biased statement because it was not made during *voir dire* and, therefore, not to the entire panel of jurors. The fact that only one juror, let alone more, heard the removed juror's comment might affect the outcome of the trial.

The issue to be determined by the jury was whether the defendant's negligence proximately caused Bekir Celik's death, an individual who happened to be Turkish. If the jury found that the defendant's negligence proximately caused Celik's death, it was then to determine the amount of damages to be awarded to his estate.

Celik's nationality was a concern to both parties, and whether the potential jurors would decline to award damages based upon his nationality was a direct concern to appellant. The potential jurors were, in fact, questioned during *voir dire* by appellant's counsel about their beliefs in this regard. Appellant's counsel assumed from the potential jurors' reactions or lack thereof that they would not be influenced by Celik's nationality. The trial court then empaneled a jury.

The alleged prejudicial comment was obviously and directly connected to appellant's case, and it obviously had the potential to influence the ability of any one of the jurors to objectively review the defendant's liability. The fact that the trial court interviewed the jurors who heard the comment after the fact does not alter my opinion.

Appellant, as the administrator of the estate of Celik, was entitled to a fair and impartial trial under Section 5, Article I, Ohio Constitution. How can he have been granted this right when any juror who overheard the comment could have decided not to award damages even before hearing the evidence offered at trial? In other words, a juror could decide that Celik's estate was not entitled to damages, and then pay no attention to the evidence because there would have

been no necessity to determine the defendant's negligence. Rather than deciding whether negligence occurred, and then the damages, the negligence issue would be totally removed from a juror's consideration as a result of a preconceived notion that the estate was not entitled to damages. This turnabout outright infringes on a party's right to a fair trial because it breaches the sanctity of the jury and its most important function to determine liability prior to assessing damages.

I accordingly dissent and find that the trial court abused its discretion in denying appellant's motion for mistrial or for new trial.